UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNSON & JOHNSON, ETHICON, INC., ETHICON US, LLC, and JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., | Case No. 20-cv-3471 |
| Plaintiffs, | Judge Robert M. Dow, Jr. |
| v. | Magistrate Judge Jeffrey I. Cummings |
| ADVANCED INVENTORY MANAGEMENT, INC. d/b/a ESUTURES.COM, ANTHONY IADEROSA JR., JASON EINHORN, MIKE PHIPPS, and MUDASSAR SHAH, | **FILED UNDER SEAL** |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF CONCERNING
ADVANCED INVENTORY MANAGEMENT, INC. D/B/A ESUTURES.COM'S AND
ANTHONY IADEROSA'S FINANCIAL RECORDS**

Plaintiffs Johnson & Johnson, Ethicon, Inc., Ethicon US, LLC, and Johnson & Johnson Health Care Systems, Inc. (collectively, "Ethicon") respectfully submit this supplemental brief in response to the Court's Order (Dkt. No. 242) permitting Ethicon to address the financial records obtained via Ethicon's third-party subpoenas on the banks of Defendants Advanced Inventory Management, Inc. d/b/a eSutures.com ("AIM") and Anthony Iaderosa Jr. (collectively, "eSutures"). Ethicon has now received over thirty thousand pages of records from eSutures's financial institutions in response to Ethicon's June 17, 2020 subpoenas. Decl. of Geoffrey Potter, dated Sept. 16, 2020 ("Potter Decl.") ¶ 3.[1]

---

[1] Ethicon has not yet received records for Lakeside Bank account numbers ending in 3844 or 6644. Potter Decl. ¶ 4. Although eSutures listed those accounts in its unsworn "Iaderosa Account Information" exhibit filed with the Court, Dkt. No. 130, Lakeside Bank has asserted that those records fall outside the scope of Ethicon's subpoena, Potter Decl. ¶ 4. Ethicon has served a new subpoena on Lakeside Bank to obtain those financial records. *Id.*

As the Court has requested this brief within three business days of receipt of these records, Ethicon's review is preliminary and ongoing. As Ethicon noted in prior filings, a meaningful understanding of eSutures's finances will take time, as will Ethicon's investigation of leads generated by those records. Ethicon has already served a number of additional non-party subpoenas, and responses are starting to come in under the Court's Expedited Discovery Order. Moreover, Ethicon still lacks large portions of eSutures's financial data, which, as described below, severely limits Ethicon's ability to follow the money and trace eSutures's counterfeiting.

That said, the initial review of the subpoenaed financial records provides striking confirmation of evidence Ethicon has already provided to the Court showing that eSutures *knowingly* engaged in the distribution of counterfeit Ethicon surgical devices. Although eSutures imported a large volume of counterfeits from Medserve, the bank records show that (except for one early transaction), eSutures *did not pay* for those counterfeits. And although eSutures shipped expired SURGICEL® devices to Medserve, the bank records show that Medserve *did not pay* eSutures for those "sales." eSutures and Medserve were not engaged in arms-length transactions as buyer and seller; they were partners in a counterfeiting scheme, with eSutures providing Medserve with expired surgical devices that Medserve repackaged into counterfeit packaging with fake expiration dates, with some of the counterfeits being shipped back to eSutures as payment. There was no need for cash payments for these transactions because eSutures took its payment in repackaged, expired, and contaminated counterfeits.

Ethicon's initial observations, based on the incomplete data currently available, also confirm that eSutures's books and records simply cannot be relied upon. eSutures has intentionally obfuscated the trail of money by, for example, depositing corporate checks from

2

customers payable to the order of AIM into Defendant Iaderosa's personal accounts and by sending and receiving over a million dollars in untraceable cryptocurrency.

The bank records also show hundreds of thousands of dollars—funded both by AIM and Iaderosa personally—being sent to Magellan Medical Supply F.Z.E. to fund eSutures's "Magellan Shuffle," which makes tracing the pedigree of eSutures's medical devices nearly impossible. eSutures has refused to provide any transactional details regarding its Magellan accounts or its other accounts in the United Arab Emirates, and so Ethicon cannot trace the medical devices laundered through Magellan.

Finally, Ethicon has already identified two new suppliers of medical devices that eSutures has paid, but which do not appear on eSutures's vendor lists, further calling into question the accuracy of eSutures's corporate records.

## I. Bank Records Confirm that eSutures Partnered with Medserve to Manufacture Counterfeits

Despite the fact that eSutures imported a large volume of counterfeits from Medserve, the bank wire records show that eSutures *paid* Medserve for only a single purchase order, totaling less than $20,000, in December 2018.[2] Potter Decl. Ex. 243 The undisputed evidence shows that after that early purchase, eSutures acquired thousands of additional counterfeit devices from Medserve—but eSutures did not pay for them. This confirms that, as set forth in Ethicon's moving papers, eSutures was not simply a customer unwittingly purchasing from Medserve without knowing that Medserve was peddling counterfeits. Rather, as evidence already

---

[2] The wire records show two equal payments made in December 2018 for purchase order number 183198. Potter Decl. Ex. 244. That purchase order lists 20 boxes of Ethicon LIGACLIP® Extra Ligating Clip (product code LT200) and 100 boxes of SURGICEL® Absorbable Hemostat (product code 1952). *Id.* Third-party shipping records show that Medserve shipped those products directly to eSutures's warehouse. Pl. Ex. 17.

presented to the Court shows, eSutures knowingly partnered with Medserve to *manufacture* counterfeits: eSutures provided the raw materials, Medserve repackaged them into counterfeit packaging, and eSutures received some of the counterfeits back as compensation. *See* Dkt. No. 176, at 34-35; Dkt. No. 238, at 4-5. This is further confirmed by the fact that despite the large volume of expired SURGICEL® devices that eSutures claims to have "sold" to Medserve, eSutures never received a single payment from Medserve. *See id.*; *see also* Pl. Ex. 47.

## II.     eSutures Funneled Corporate Funds to Untraceable Cryptocurrency

The bank records also show that Defendant Iaderosa regularly deposited business checks *made out to AIM* into his personal checking account. In 2017 and September 2018, Iaderosa deposited nearly ▬ checks made out to AIM, totaling approximately ▬ into his personal checking account (▬) at Lakeside Bank. Potter Decl. Ex. 245; *see* Dkt. No. 130. Ethicon does not know why these funds were diverted in this way. But the fact that AIM's CEO deposited business checks into his personal account, circumventing the corporation's accounting procedures, raises serious concerns about the accuracy of eSutures's books.

Moreover, the bank records show that Iaderosa moved substantial funds from his personal accounts into CoinBase, a platform that trades in cryptocurrencies like Bitcoin. Ethicon served a non-party subpoena on CoinBase, which provided the records associated with Iaderosa's CoinBase account. Those records show that in addition to purchasing cryptocurrency with U.S. dollars, Defendant Iaderosa engaged in multiple transfers of cryptocurrency with third parties, consistent with a purchase or sale of goods: in total, Defendant Iaderosa <u>received</u> cryptocurrencies (Bitcoin and Ethereum) worth over $▬ from third parties between May to September 2018, and <u>sent</u> cryptocurrencies worth over $▬ to third parties between June to November 2018. Potter Decl. Ex. 246. Financial transactions in cryptocurrencies are

4

notoriously untraceable, as all accounts are held under pseudonyms, which is why the platform is favored by counterfeiters and criminals.[3] Indeed, even CoinBase could not identify the counterparties of Iaderosa's transactions. For that reason, Ethicon cannot trace where these funds came from or where they went. The only person with knowledge about these transaction—Defendant Iaderosa—has taken the Fifth. The use of cryptocurrencies such as BitCoin, along with Iaderosa's refusal to testify, means these funds lead to a dead end.

### III. Bank Records Show Hundreds of Thousands of Dollars being Sent to Magellan Medical From Both AIM's and Iaderosa's Accounts

As discussed in Ethicon's preliminary injunction papers, eSutures set up the shell company Magellan Medical Supply F.Z.E. in the United Arab Emirates to secretly import into the United States medical devices obtained from unregistered gray-market suppliers abroad, such as from known counterfeiters Medserve and Spa Medical/IMD. *See* Dkt. No. 176, at 36-40; Dkt. No. 238, at 10-11. eSutures's vendor list indicates that it has purchased hundreds of thousands of dollars of medical devices from Magellan, rather than recording the name of the original vendor that supplied the product. *See* Pl. Ex. 83, at 33. Despite Ethicon's discovery requests, eSutures has not provided any sworn information concerning the balance of or transactions in Magellan Medical's accounts. *See* Pl. Exs. 127, 212. The accounts remain unfrozen, Dkt. No.

---

[3] *See, e.g.*, *United States v. Michael Gordon*, No. 2:19-cr-232, Dkt. No. 10 (E.D. Pa. Apr. 24, 2019) (criminal indictment describing purchases of counterfeit pills on the "Dark Web" from counterfeiter that only accepted Bitcoin as payment); *Commodity Futures Trading Comm'n v. McDonnell*, 287 F. Supp. 3d 213, 219 (E.D.N.Y. 2018) ("The rise in users and value of virtual currencies has been accompanied by increased fraud and criminal activity. The newest growing concern with Bitcoin, and crypto-currencies in general, are their ability to wash money and conceal taxable income." (citation, quotation marks, and alteration omitted)); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 547 (S.D.N.Y. 2014) (describing the use of Bitcoin as "an anonymous and untraceable form of payment" on the website "Silk Road," an "online marketplace for illicit goods and services").

130, and Ethicon does not know whether eSutures has complied with the Court's asset freeze order or the business that has been transacted through those accounts.

The recently obtained bank records show that AIM transferred nearly $ ▇ to Magellan in three separate payments in October 2019 and January 2020. Potter Decl. Ex. 247. In addition, Defendant Iaderosa transferred $ ▇ to Magellan in May 2019 from his <u>personal checking account</u>. Potter Decl. Ex. 248. eSutures has asserted, without evidentiary support, that only about US $ ▇ remained in Magellan's accounts as of July 14, 2020. *See* Dkt. No. 130. Because Defendant Iaderosa has refused to provide any transaction information regarding these accounts, Ethicon cannot follow the trail of funds for the hundreds of thousands of dollars' worth of medical devices purchased through the Magellan Shuffle.

### IV. Bank Records Illuminate Omissions in AIM's Corporate Records

Even Ethicon's initial review of eSutures's bank records has already revealed transfer records showing thousands of dollars in payments to overseas medical device vendors that were *omitted* from AIM's corporate records. These payments, coupled with their absence on eSutures's vendor records, again suggest that eSutures intentionally hid these transactions because of their improper nature. *See also* Dkt. No. 176, at 44-47, 89-94. A legitimate business would not have unexplained payments to overseas vendors that are not reflected in its corporate records, just as a legitimate business would not have vendors ship inventory to the homes of its employees rather than to the corporate warehouse.

<u>First</u>, in February 2018, eSutures wired nearly $ ▇ to a Brazilian vendor called HP Bioproteses Ltda. Potter Decl. Ex. 249. Although paid for by eSutures out of AIM's corporate account, the devices listed in the HP Bioproteses invoice were shipped to Defendant Shah in

Pakistan, rather than eSutures in the United States. Potter Decl. Exs. 250, 251. HP Bioproteses is not listed on eSutures's list of vendors. See Pl. Ex. 83.

Second, in May 2018, eSutures wired nearly $▮ to the Chinese vendor Shanghai Shen Da Imp & Exp. Co Ltd. Potter Decl. Ex. 252. Shanghai Shen Da does not appear in eSutures's list of vendors either. See Pl. Ex. 83. The Shanghai Shen Da invoice lists surgical staplers from a Chinese manufacturer called Golden Stapler Surgical Co., Ltd., Potter Decl. Ex. 253, which manufactures surgical staplers "modeled" on Ethicon products, see Potter Decl. Ex. 254. Although eSutures purchased 25 staplers at $▮ each, the invoice states that the staplers are "Demo for training and research." Potter Decl. Ex. 253. So far, Ethicon has been unable to identify this purchase anywhere in eSutures's purchase or inventory records.

Ethicon's investigation into these transactions is ongoing.

Dated: September 16, 2020

Respectfully submitted,

 */s/* Bradley J. Andreozzi
BRADLEY J. ANDREOZZI (ARDC No. 6286557)
MATTHEW M. MORRISSEY (ARDC No. 6302575)
FAEGRE DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000
bradley.andreozzi@faegredrinker.com
matthew.morrissey@faegredrinker.com

and

 */s/* Geoffrey Potter
GEOFFREY POTTER
ARON FISCHER (*admission application to be submitted*)
TIMOTHY A. WATERS (*admission application to be submitted*)
JOSHUA R. STEIN
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222
gpotter@pbwt.com
afischer@pbwt.com
twaters@pbwt.com
jstein@pbwt.com

*Attorneys for Plaintiffs Johnson & Johnson, Ethicon, Inc., Ethicon US, LLC, and Johnson & Johnson Health Care Systems Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 16, 2020, I caused the foregoing, along with its supporting declaration and exhibits, to be served by electronic mail upon the following:

Jack Selden
Greg Marshall
Scarlett Nokes
Erin Sullivan
Michael Denniston
BRADLEY ARANT BOULT CUMMINGS LLP
jselden@bradley.com
gmarshall@bradley.com
snokes@bradley.com
esullivan@bradley.com
mdenniston@bradley.com

- and -

Alexander Vesselinovitch
Matthew T. Connelly
D. Richard Self
FREEBORN & PETERS LLP
avesselinovitch@freeborn.com
mconnelly@freeborn.com
rself@freeborn.com

*Counsel for Defendants Advanced Inventory Management, Inc. d/b/a eSutures.com, Anthony Iaderosa Jr., Jason Einhorn, and Mike Phipps*

                                                        */s/* Matthew M. Morrissey